UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO MOLINA,<br><br>        Plaintiff,<br><br>  v.<br><br>K. HOLLAND, et al.,<br><br>        Defendants. | Case No. 1:15-cv-01260-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDERS IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NOS. 28, 30, & 32)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

      Mario Molina ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 8). Defendants declined to consent to magistrate judge jurisdiction. (ECF No. 49).

      The Court previously screened Plaintiff's complaint before any defendants appeared. (ECF Nos. 28 & 32). The Court found that Plaintiff stated a cognizable claim against Defendant Rivera for excessive force in violation of the Eighth Amendment, against Defendants Rivera and Stanley for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against Defendants Rivera, Stanley, Holland, Gutierrez, and Jones for retaliation in violation of the First Amendment, and dismissed all other claims and defendants. (<u>Id.</u>).

      Prior to the Court dismissing claims and defendants, Plaintiff agreed to proceed only on the claims found cognizable by the Court. (ECF No. 29). Plaintiff also provided a copy of the

1

First Amended Complaint that was signed under penalty of perjury, and that included page twenty-four (a page that was missing from his previously filed copy). (ECF No. 30). As page twenty-four included an additional claim, the Court screened that claim, and dismissed it without prejudice for failure to state a claim upon which relief could be granted. (ECF No. 32, pgs. 2-3).

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the orders by the magistrate judge at the screening stage.

I. **WILLIAMS v. KING**

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its orders dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening orders.

II. **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

### III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges in his First Amended Complaint that on December 13, 2013, Plaintiff was involved in a fight with another prisoner. Plaintiff characterizes it as "a minor mutual combat fight," which lasted less than a minute. There were no weapons involved, and no serious injuries occurred. The staff responded quickly and restored order. When the staff ordered Plaintiff and the other prisoner to stop, they did. Plaintiff and the other prisoner lay down with their hands behind their back. Despite this, the staff sprayed Oleoresin Capsicum ("O.C.") on both Plaintiff and the other prisoner.

Plaintiff and his opponent were handcuffed, searched, and secured. At that point, they did not pose a threat. While Plaintiff was handcuffed and lying down, Defendant Rivera approached Plaintiff from behind, grabbed Plaintiff's upper-torso, and "point-blank" sprayed O.C. on Plaintiff's face, injuring Plaintiff's right eye and leaving his left eye with limited

vision. The pressure from the canister was so great that it punctured the cornea in Plaintiff's right eye. The spay-can was approximately four inches from Plaintiff's face when Defendant Rivera sprayed Plaintiff with the O.C. Defendant Rivera then kicked Plaintiff in the rib cage.

After the incident, Plaintiff was escorted to the program office and placed in a holding cage without water or a toilet. Plaintiff lacked water for decontamination. While in the holding cage, Plaintiff requested a chance to wash the O.C. off his face. Defendant Rivera laughed and stated in Spanish "as long as you are not dead, everything is good."

While Plaintiff was having this discussion from the holding cell, Defendant Stanley asked what Plaintiff wanted. Defendant Rivera responded that Plaintiff wanted to wash the O.C. off his face. Defendant Stanley laughed and stated "No! Take that as a lesson, not to fuck with my program. Now, you have to wait, until you get back to your house." Defendant Stanley and Defendant Rivera then walked away and left Plaintiff in a holding cell without an opportunity to decontaminate from about 6:35 a.m. until 9:20 a.m. Plaintiff requested medical attention from Defendant Stewart, a Registered Nurse. Plaintiff also asked for help to have the O.C. washed out of his eyes. Defendant Stewart relayed the request to Defendant Stanley, but Defendant Stanley refused the requested relief.

Plaintiff later learned that the pressure of the O.C. had punctured Plaintiff's cornea and the O.C. had entered Plaintiff's eye-ball behind the cornea, burning Plaintiff's nerves and muscles inside his eye.

Plaintiff eventually returned to his cell and washed off the O.C. Throughout the day, Plaintiff tried to get the attention of the staff on the control floor, as well as the staff on the floor of the building, pleading for medical attention and informing them that there was something wrong inside his eye. The staff informed him to put in a medical request, which he did, with no results.

On December 15, 2013, Plaintiff went to the facility clinic and told the nurse on duty about the pain in his eye. The nurse informed Plaintiff that it would take a few days to feel better. The nurse did not check Plaintiff's eye nor refer him to an eye doctor.

On December 16, 2013, Plaintiff went to his assignment. Plaintiff's teacher at his

education program called the medical staff to look at Plaintiff's eye. A registered nurse then gave Plaintiff eye drops and motrin. Plaintiff said the pain was unbearable, but medical staff told Plaintiff "that's normal." The medical staff did not consult an expert.

From December 14, 2013, through mid-January 2014, Plaintiff was denied adequate medical attention, despite numerous attempts to obtain the appropriate medical attention. It took approximately one to one and half months to obtain medical attention from an eye doctor. The doctor determined that Plaintiff's right eye had been lacerated/punctured. As a result, Plaintiff had no vision in his right eye. The doctor also determined that Plaintiff's left eye had partial vision, with no cornea damage. The doctor recommended cornea transplant surgery.

Plaintiff filed his first administrative appeal on January 6, 2014. However, the appeal was "lost" and not logged. On one occasion, Defendant Rivera told Plaintiff in no uncertain terms that Plaintiff should not pursue any complaint against him. On another occasion, Defendant Stanley called Plaintiff to the program office and told Plaintiff that if he pursued any complaints against him or his staff, Plaintiff would be sorry. Plaintiff was surrounded by several guards and feared for his safety. However, Plaintiff refused to stop pursuing the filing of his appeal.

Plaintiff later filed a complaint against Defendant Rivera and mentioned the other defendants, which required a videotaped interview that was submitted to the Internal Affairs Group. Prior to the interview, Defendants Rivera and Stanley, as well as other unidentified guards, repeatedly cajoled and threatened Plaintiff to deter him from conducting the interview.

The interview was conducted on July 28, 2014. Plaintiff reiterated the allegations against Defendants Rivera and Stanley. Plaintiff also indicated that he had been constantly harassed and had received threats from Defendants Rivera and Stanley and from unknown guards. In response, Plaintiff was placed in Administrative Segregation for fourteen months. This term was approved by a Lieutenant, a Captain and a Sergeant, as well as Defendants Kim Holland and J. Gutierrez. Plaintiff was purportedly placed there "pending an investigation." However, Plaintiff had committed no rules violations and was no threat to the safety of the institution. The reason for his placement in Administrative Segregation was as a reprisal and to

silence Plaintiff. In the end, no investigation was conducted.

While in Administrative Segregation, Plaintiff was "red lined," which means that staff were not to do anything for him. Plaintiff was denied access to his personal property. Plaintiff's mail was routinely thrown away. Plaintiff's legal mail was often open and read by prison staff. It was also withheld so that Plaintiff could not meet time limitations in responding to any adverse ruling or attempt to exhaust available administrative remedies. Plaintiff was repeatedly told that all of this would stop if he just withdrew the staff complaint against defendants and admitted that his interview statements were false. Defendant Rivera in particular harassed and threatened Plaintiff.

Defendants Kim Holland, J. Gutierrez, and Captain Jones consistently attempted to shield the prison and its staff from liability by asking Plaintiff to drop the staff complaint in exchange for release from Administrative Segregation. They repeatedly told Plaintiff that if Plaintiff abandoned the complaint, Plaintiff would come off the "shit list."

On April 14, 2014, five months after the O.C. incident, Plaintiff received the first cornea transplant surgery. The surgery was a failure. The eye doctor who conducted the surgery concluded that prison medical staff had failed to give Plaintiff the necessary anti-rejection medication to help Plaintiff's eye accept the new cornea.

Plaintiff underwent another cornea transplant surgery on July 24, 2014, which was a failure. Plaintiff received another transplant on February 3, 2015, which failed, and another on July 9, 2015, which failed. Every time, Plaintiff's body rejected the cornea. Plaintiff received more than six cornea transplants, but none were successful. Plaintiff's sight in his right eye has been permanently impaired.

Through the course of four of Plaintiff's surgeries, Plaintiff was under the care of Defendants Dr. El-Said and Dr. Wilson. They failed to provide adequate follow up treatments with outside specialists, anti-rejection drug medication, adequate pain medication, appropriate eye-drops, and cleaning materials. They also failed to assign a nurse to clean and maintain Plaintiff's eye after each surgery.

\\\

## IV. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR EXCESSIVE FORCE

Plaintiff's first cause of action claims that Defendant Rivera violated the Eighth Amendment by using excessive force.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not… use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, the court looks to the "extent of the injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

The Court finds that Plaintiff states a claim for violation of the Eighth Amendment through use of excessive force against Defendant Rivera.

## V. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS FOR FAILURE TO ALLOW DECONTAMINATION

Plaintiff's second cause of action claims that Defendants Rivera, Stanley and Stewart violated his Eighth Amendment Rights by denying Plaintiff medical attention following the

O.C. spray incident.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. at 836-37 & n.5 (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, "plaintiff

must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds that Plaintiff states a claim against Defendants Rivera and Stanley for deliberate indifference to serious medical needs. Construing the facts liberally in favor of Plaintiff, Plaintiff has sufficiently alleged that Defendants Rivera and Stanley were aware that Plaintiff needed medical care but purposefully refused to provide that care knowing it would subject Plaintiff to unnecessary pain.

However, the Court finds that Plaintiff's First Amended Complaint fails to state a claim against Defendant Stewart. Although Defendant Stewart also did not provide an opportunity for Plaintiff to decontaminate, Plaintiff's allegations show that she asked for permission from Defendant Stanley and was denied. These allegations are not sufficient to demonstrate that Defendant Stewart was acting with the necessary deliberate indifference to Plaintiff's medical needs.

## VI. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS FOR FAILURE TO ADEQUATELY TREAT PLAINTIFF'S CORNEA INJURY

Plaintiff next asserts an Eighth Amendment claim against multiple defendants on the medical staff for failing to adequately treat Plaintiff's cornea injury. Plaintiff points to the delay in treatment, assertions that Plaintiff's pain was normal, and the delay in obtaining surgery.

The Court finds that Plaintiff fails to state an Eighth Amendment claim based on his care following his initial injury. Although Plaintiff's allegations demonstrate a delay in care and misdiagnosis of the severity of Plaintiff's condition, he does not allege facts indicating that any individual defendant was aware of his medical needs and purposefully failed to provide medical attention. Instead, Plaintiff alleges facts that at most amount to professional negligence, which, as described above, does not give rise to a constitutional violation.

\\\
\\\

## VII. EVALUATION OF PLAINTIFF'S RETALIATION CLAIM

Plaintiff's fourth cause of action claims that Defendants Holland, Gutierrez, Jones, Stanley, Rivera, and Lieutenant John Doe violated his First Amendment rights by retaliating against him and threatening him for filing complaints, and putting him in Administrative Segregation to persuade him to withdraw his complaint.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The Court finds sufficient allegations against Defendants Rivera and Stanley to support a retaliation claim because Plaintiff alleges that they made direct threats and statements against him for exercising his First Amendment rights.

The Court also finds that Plaintiff has stated a cognizable retaliation against Defendants Holland, Gutierrez, and Jones. Plaintiff alleges that "Defendant Holland, Gutierrez, and Jones repeatedly told plaintiff, when he appeared before committee (ICC/UCC) that, if he abandons the complaint, plaintiff would come off the 'shit list.'" (ECF No. 26, p. 12). Plaintiff also alleges that they personally asked Plaintiff to drop the staff complaint in exchange for release from Administrative Segregation. The Court notes that the allegations against these three defendants are not as specific and direct as those against Defendants Rivera and Stanley. Nevertheless, at the pleading stage, the Court finds sufficient allegations to proceed beyond the pleading stage against these defendants as well.

The Court does not find sufficient allegations to support a claim for retaliation against any other defendants, including Doe defendants.

## VIII.  EVALUATION OF PLAINTIFF'S GENERAL CIVIL RIGHTS CLAIM

Plaintiff's fifth cause of action asserts a "cause of action for violation of civil rights against all defendants." It is a hodgepodge of allegations including excessive force, retaliation, violation of Plaintiff's equal protection rights, violation of Plaintiff's due process rights, false imprisonment, and intimidation, among others. It overlaps with other causes of action, but with less specificity. It includes claims that do not state legal causes of action, such as harassment.

This cause of action does not establish an independent claim against any defendant. Plaintiff's other causes of action, to the extent upheld above, appear to have stated the appropriate constitutional law claims against specific defendants. The general allegation does not state any additional legal claim based on Plaintiff's allegations.

## IX.  EVALUATION OF PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTION DISTRESS

Plaintiff's sixth cause of action asserts a claim against all defendants for intentional infliction of emotional distress. Plaintiff alleges that "defendants intended to cause plaintiff to lose his eye and to suffer emotional distress, or the defendants engaged in conduct with reckless disregard of the probably of causing plaintiff harm and to suffer emotional distress…." (ECF No. 26, p. 23)

The elements of a cause of action for intentional infliction of emotional distress are: (1) defendants' outrageous conduct; (2) defendants' intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) Plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. Nally v. Grace Community Church of the Valley, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110, 763 P.2d 948 (1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminister, 185 Cal.Rptr. 252 (1982) (quoting Cervantez v. J.C. Penney Co., 156 Cal.Rptr. 198, 595 P.2d

975 (1979)).

Additionally, because this is a tort claim against a state employee, Plaintiff must demonstrate compliance with the California Tort Claims Act. Under the California Tort Claims Act ("CTCA"), a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. *See* Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). The purpose of CTCA's presentation requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." City of San Jose v. Superior Court, 115 Cal.Rptr. 797, (1974). Thus, in pleading a state law claim, plaintiff must allege facts demonstrating that he has complied with CTCA's presentation requirement. State of California v. Superior Court (Bodde ), 90 P .3d 116, 119 (2004). Failure to demonstrate compliance constitutes a failure to state a cause of action and will result in the dismissal of a plaintiff's state law claims. Id.

As Plaintiff does not allege compliance with the CTCA in his complaint, the Court will recommend dismissing this claim for failure to state a claim.[1]

## X. EVALUATION OF PLAINTIFF'S RICO CLAIM

The Court finds that the facts alleged in Plaintiff's First Amended Complaint do not state a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Plaintiff is attempting to state a claim under 18 U.S.C. § 1962(c). "A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007). It is unclear from Plaintiff's First Amended Complaint what racketeering activity Plaintiff is alleging that Defendants engaged in. Plaintiff simply states "Defendants are liable under Section 1964 (c) of the Act because Plaintiff was injured/assaulted/battery [sic] in their business or property (and the loss of his eye and loss of

---

[1] The Court notes that Plaintiff was given leave to amend (ECF No. 28, p. 12), but he opted not to (ECF No. 29).

12

free movement for fourteenth [sic] months) by reason of the defendants violation of Section 1962 of the act." (ECF No. 30, p. 24).

Given that Plaintiff alleges this claim for the first time in the First Amended Complaint, and the ambiguity in what conduct Plaintiff is alleging constituted racketeering activity, the Court would ordinarily grant leave to amend. However, as the First Amended Complaint does not state a cognizable claim for violation of RICO, and as Plaintiff agreed to go forward only on the claims the Court found cognizable, the Court will not recommend granting Plaintiff leave to amend. Instead, the Court recommends that the RICO claim be dismissed without prejudice.

## XI. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that all claims and defendants, except for Plaintiff's claim against Defendant Rivera for excessive force in violation of the Eighth Amendment, against Defendants Rivera and Stanley for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against Defendants Rivera, Stanley, Holland, Gutierrez, and Jones for retaliation in violation of the First Amendment, be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections.

\\\
\\\
\\\\
\\\
\\\
\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 7, 2017**         /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE