# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO MOLINA,<br><br>    Plaintiff,<br><br>v.<br><br>K. HOLLAND, et al.,<br><br>    Defendants. | Case No. 1:15-cv-01260-DAD-EPG (PC)<br><br>**ORDER RE: PRODUCTION OF DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW**<br><br>(ECF NO. 91) |

## I. BACKGROUND

Mario Molina ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's First Amended Complaint (ECF No. 30),[1] on Plaintiff's "claims against defendant Rivera for excessive use of force in violation of the Eighth Amendment, against defendants Rivera and Stanley for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against defendants Rivera, Stanley, Holland, Gutierrez, and Jones for retaliation in violation of the First Amendment." (ECF No. 74, pgs. 2-3). Those claims stem from Plaintiff's allegation that Defendant Rivera sprayed him with pepper spray "point-blank"

---

[1] Plaintiff's First Amended Complaint is listed on the Docket as Plaintiff's Second Amended Prisoner Civil Rights Complaint.

1

on his face and then refused to let him decontaminate, resulting in severe and permanent injury to the eye. When Plaintiff complained about what happened to prison officials, he was placed into Administrative Segregation for fourteen months without any charges or rules violation reports.

Defendants claim that numerous documents regarding the underlying incident should be shielded from disclosure under the official information privilege. These withheld documents include all incident reports, conclusions from a related rules violation report, all interview notes of the witnesses to the event, and all analyses and conclusions from investigating officials. Defendants have submitted these documents for *in camera* review.

The Court has reviewed all submitted documents and issues the following order regarding their production.

**II.      LEGAL STANDARDS**

In *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976), the Ninth Circuit Court of Appeals examined the government's claim of the official information privilege as a basis to withhold documents sought under the Freedom of Information Act. It explained that the "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure . . . ." *Id.* at 198 (internal citations omitted).

The Ninth Circuit has since followed *Kerr* in requiring *in camera* review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g., Seminara v. City of Long Beach*, 68 F.3d 481 (9th Cir. 1995) (affirming a magistrate judge order compelling disclosure and stating "Federal common law recognizes a qualified privilege for official information."); *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) (quoting *Kerr*, 426 U.S. at 406) ("Also, as required by Kerr, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991) (internal

citations omitted) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.").

In interpreting the official information privilege in this context, the Court also looks to the U.S. Supreme Court's statements related to the requirement that prisoners exhaust administrative remedies. The Supreme Court has upheld the "proper exhaustion" requirement in part because of the evidentiary value of the documents generated as a result of that process. *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) ("Finally, proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").

It is also worth noting that District Judge Anthony W. Ishii overruled a similar objection based on the official information privilege by correctional officer defendants to production of prison investigation documents, including witness statements and summaries of the evidence. *Caruso v. Solorio,* 2018 WL 2254365, at *2 (E.D. C.A., May 17, 2018) ("That endorsement [from *Woodford*] is relevant to the balancing test in that it shows the relevance and beneficial use of evidence gathered in a prison's investigation, which should be balanced against the prison's security interests in evaluating the official information privilege. In short, it is appropriate to note that the Supreme Court has referred to the usefulness of witness statements that were generated from an investigation of a grievance.").

**III.　DOCUMENTS WITHHELD BY DEFENDANTS UNDER THE OFFICIAL INFORMATION PRIVILEGE**

Defendants have withheld the following categories of documents, on the basis of the official information privilege:

- Institutional Executive Review Committee (IERC) Critique and Qualitative Evaluation, which includes a synopsis of the underlying incident and evaluation

3

of use of force.
- Administrative Review of Use of Force, reviewing all evidence and witness accounts of events and concluding regarding the sufficiency of the evidence.
- Report of Findings, Inmate Interview, summarizing an interview of Plaintiff as well as a witness regarding the incident.
- Various copies of Form 602 grievances submitted by Plaintiff, as well as the prison's responses to those grievances, sent to Plaintiff.
- Confidential Supplement to Appeal Inquiry, including summaries of witness interviews, which it notes were note recorded, as well as the conclusion by reviewing officials.
- Crime Incident Reports created by correctional officers at time of incident regarding their description of events.
- Notice of Interview, regarding notification of interview for witnesses and rights of the interviewees.
- Advisement of Rights to correctional officer regarding staff complaint.
- Brief Form Regarding Conclusion of Appeal.
- Conclusions from a Rules Violation Report against Plaintiff.

In summary, Defendants have withheld all documents regarding all investigations into the underlying incident, including incident reports written by the correctional officer defendants; evaluation of the 602s; notes of interviews of Plaintiff, witnesses, and defendants; summaries of all evidence; findings of all reviewing officers.

### IV. ANALYSIS OF OFFICIAL INFORMATION PRIVILEGE

The Court begins its analysis with the potential advantages of disclosure. Those benefits are substantial. The documents contain contemporaneous statements and interview notes from witnesses close in time to the events at issue. Those witnesses include the plaintiff and the defendants in this case. Their reports are particularly valuable given the passage of time, as the incident took place almost five years ago. As the Supreme Court stated in *Woodford*, this litigation can certainly be assisted by the information gathered in the prison investigation process

"while memories are still fresh, and evidence can be gathered and preserved." The documents are also important to the factfinding in this case because they include witness statements and incident reports regarding the central allegations in the case, i.e., use of force and medical care on the date in question. Without question, the documents would be subject to discovery under the standards of Federal Rule of Civil Procedure 26(b)(1) because they are relevant to Plaintiff's claim, proportional to the needs of the case, and important to resolving the issues.

The investigation documents are also highly relevant in this case because of the specific claim of retaliation, which alleges that Plaintiff was placed in Administrative Segregation in retaliation for filing a staff complaint, and that Defendants' investigation was used as a pretext to keep him in Administrative Segregation. The process and conclusion of that investigation is relevant that claim.

In support of their claim of official information privilege, Defendants have submitted the Declaration of J. Wood, acting litigation coordinator at California Correctional Institution. First, Mr. Wood claims that "disclosure of these records and results would inform inmates about CDCR's excessive force review procedures, hampering future investigations. If this information is disclosed to Inmate Molina, inmates would be aware of how **all** use-of-force reviews are conducted, and under what circumstances incidents are referred for an inquiry or investigation." (ECF No. 94, p. 3).

The Court does not find that this potential disadvantage supports withholding the documents. First of all, such logic would justify withholding all documents in all investigations of use of force, such that prison inmates would never receive the benefit of the contemporaneous witness statements and other documents. Especially in light of the Supreme Court's statements mentioned above, the Court declines to hold that the official information privilege should shield production of any such documents. Moreover, the underlying documents do not include policy statements or instructions to officers regarding how to weigh evidence and proceed, to the extent that such information would be revealing. They merely include an evaluation of the witness statements and available evidence. Revealing that basic investigation procedure is hardly endangering to the prison's safety and security. Indeed, J. Wood's description of the process in

5

the public disclosure supporting Defendants' claim of privilege describes the procedure in as much detail as an inmate could glean from these documents. In sum, the Court does not see a safety and security threat created by an inmate learning the basic steps of investigation procedure already described in J. Wood's declaration.

Through that declaration, Defendants next argue that "This material has been treated as highly sensitive and has been kept confidential with access only by certain CDCR staff. The release of these documents, even under a protective order, would mean that CDCR would no longer control the sensitive information contained in those documents and that the information could reach prison inmates, including gang members, with potentially catastrophic results. The release of this information could also jeopardize the security of any institution where inmates are being held." (ECF No. 94, p. 3). While J. Wood's conclusions are indeed dire and "catastrophic," the Court does not understand how they follow from the proposed disclosure. Again, the withheld documents are incident reports, witness statements, and investigation analyses regarding a specific event in December 2013. There is no mention of confidential informants. There is no mention of gang activity. There is no mention of any confidential surveillance techniques. Indeed, J. Wood does not point to a single statement or piece of information in those documents that would lead to "catastrophic results." The Court finds the assertion that allowing an inmate to see a report that the CDCR initially marked confidential would result in catastrophe to be wholly unsupported and hyperbolic.

J. Wood also claims that disclosure would have a chilling effect on witnesses to the investigation. (Id. at 4). The Court does not believe this to be so, and J. Wood provides no support for the assertion. Witnesses already have an incentive to be truthful in an investigation. The fact that those statements could be turned over to a plaintiff and possibly used in a court of law would seem to only add to the need for truthful testimony. Again, J. Wood does not point to anything unique about these statements or these investigations that would cause a security issue, and the Court does not agree that disclosure of contemporaneous accounts would necessarily chill cooperation or truthful testimony in a prison investigation. Moreover, such an argument would be true in every investigation and such an application would result in withholding all

witness statements and similar evidence, against the Supreme Court's direction in *Woodford*.

J. Wood repeats these concerns regarding the Administrative Review related to allegations of excessive force. (Id. at 4-5). J. Woods further alleges that if the documents are disclosed to Plaintiff, he could potentially use the contents of confidential interviews to undermine working relationships between correctional officers. (Id.). The Court finds those concerns, especially concerning the gathering of evidence and witness statements, baseless for the same reasons as stated above. The Court has also reviewed the content and finds nothing in the witness statements that would undermine those relationships in this case, and J. Wood did not refer to any specific documents that would give rise to this concern. Again, this particular review was the alleged basis to keep Plaintiff in Administrative Segregation so has heightened relevant to this case.

Lastly, J. Wood claims that the confidential documents would be considered contraband and that "[i]f Inmate Molina's cell is searched, the confidential documents are subject to search and seizure." (Id. at 5). The Court finds this reasoning to be circular and dismissive of this Court's orders. J. Wood appears to be claiming that this Court should allow Defendants to withhold discoverable documents because the CDCR will ignore any court order and seize the documents anyway, even without any legal basis to do so. Surely, this is not a proper basis for an official information privilege. If this Court finds that Plaintiff is entitled to these documents, then he has a right to have the documents in his possession and they will not be contraband. If the CDCR nevertheless seizes Plaintiff's documents, notwithstanding this Court's order, the CDCR would be violating Plaintiff's access to the Courts as well as this order, and be subject to sanctions by this Court as well as potential liability to Plaintiff. Threatening to ignore this Court's order is not persuasive.

After engaging in a balance of interests as required under law in evaluating the official information privilege, this Court holds that the official information privilege does not provide a basis to withhold the investigation documents, with one exception noted below. Incident reports, witness statements, summaries of witness statements, investigation documents, and related evidence are highly relevant to this case. The countervailing disadvantages regarding revealing

this information to an inmate are not persuasive and would apply in every investigation, thus eviscerating the advantages explained by the United States Supreme in *Woodford*. Defendants have not pointed to any unique piece of information that would jeopardize safety and security if disclosed. Thus, Defendants must produce this information, with the following exception.

The Court will permit Defendants to redact any conclusion(s) made by any prison investigators regarding whether staff in fact used excessive force to the extent that conclusion has not already been shared with Plaintiff. To be clear, this does not apply to investigators' summary of the evidence—it only applies to their ultimate conclusion(s). The Court finds that the investigators' ultimate conclusion(s) have little if any relevance to this case because that question is one for the jury and the conclusion of the prison factfinder is not relevant and will likely be subject to exclusion in any event. Moreover, the Court finds credible Defendants' claim that prison investigators could be chilled from finding against their own staff if they believed that their conclusions could be used against the staff in a court of law. Finally, the Court notes that the Supreme Court's direction only explicitly applied to underlying evidence gathered in the factual investigation, and not to the conclusion of that investigation. Based on this Court's balancing, and taking into account the U.S. Supreme Court's direction, the Court finds that the official information privilege shields the conclusions from any prison investigators regarding whether defendants violated any prison policy or used excessive force against Plaintiff.

As to Defendants' request for an "attorney's eyes only" protective order, that request will be denied. As discussed above, the documents are highly relevant, and Defendants have not pointed to any unique piece of information that would jeopardize safety and security if disclosed. Accordingly, the Court sees no need for an "attorney's eyes only" protective order.

### V. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Within **14 days** from the date of service of this order, Defendants shall produce to Plaintiff the documents withheld under the official information privilege and provided *in camera*, **with the exception** of the following:

    a. Confidential identifying information about prison officers, if any, including

their first names, addresses, social security number or similar personal information.[2]

      b. Conclusions of any prison officials regarding whether staff acted appropriately and consistent with prison procedure. However, summaries of any witness statements and evidence included in such analysis documents must be provided.

IT IS SO ORDERED.

Dated: **July 11, 2018**

/s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court did not notice any such information, but includes this order in the abundance of caution.